UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY PAYNE,

               Plaintiff,

     v.

DEP'T OF SOC. & HEALTH SERVS.,
*et al.*,

               Defendants.

CASE NO. 3:20-cv-05950-RJB-JRC

REPORT AND RECOMMENDATION

Noting Date: **April 22, 2022**

Plaintiff filed a complaint under 42 U.S.C. § 1983. Dkt. 1-1. Before the Court are defendants' motions for summary judgment (Dkts. 44, 52) and plaintiff's motion for declaratory judgment (Dkt. 47). As discussed below, defendants' motions for summary judgment should be **GRANTED** and plaintiff's motion for declaratory judgment should be **DENIED**.

Plaintiff resides at the Total Confinement Facility of the Special Commitment Center ("Center"), which provides a secure mental health treatment program for civilly committed sex offenders. Plaintiff and other residents at the Total Confinement Facility may participate in the Center's vocational program and receive wages for their labor. Plaintiff alleges that defendants

pay residents at the Total Confinement Facility lower wages than they do residents of Secure Community Transition Facilities ("Transition Facilities") for the same work, violating equal protection. However, residents at the Transition Facilities have progressed much farther in their treatment and enjoy significantly greater responsibility and freedom than residents at the Total Confinement Facility. Thus, residents at the Transition Facilities are not similarly situated to residents at the Total Confinement Facility for purposes of defendants' pay scale. So the fact that Transition Facility residents receive higher pay than Total Confinement Facility residents for the same labor does not violate equal protection.

## PROCEDURAL BACKGROUND

In June 2019, a group of residents at the Total Confinement Facility filed a complaint in this District asserting, in relevant part, that the defendant in that case violated equal protection "by paying them less than others detained" at the Transition Facilities and Western State Hospital. *See* Order on Motion for Summary Judgment at 2, *Anderson et al. v. Menses*, Case No. 3:19-cv-05574-RJB (W.D. Wash. Feb. 8, 2022), Dkt. 105. The plaintiff in this case, Jeffrey Payne, was also a plaintiff in *Menses*. *See id.* at 4–7.

On June 9, 2020, in state court, plaintiff filed a complaint asserting federal and state causes of action based on wage disparities between residents at the Total Confinement Facility and residents at the Transition Facilities and Washington State Hospital. *See* Dkt. 1-1. The complaint named the following defendants: (1) the Washington Department of Social and Health Services ("Department"); (2) the Center; (3) Henry Richards; (4) William Van Hook; (5) Sjan Talbot; and (6) David Flynn. *Id.* at 2–3. Plaintiff sought injunctive and declaratory relief along with damages. *See id.* at 14.

1    Defendants removed the complaint to this Court and answered. Dkts. 1, 3. Pursuant to the

2  parties' stipulation, plaintiff's claims "are limited to his allegations and claims that [d]efendants

3  violated and continue to violate his rights under the Equal Protection Clause . . . by paying

4  resident workers housed at the . . . Transition Facilities . . . and Western State Hospital . . . a

5  higher rate of pay than he has received and continues to receive as a resident at the . . . Center['s

6  Total Confinement Facility] . . . ." *See* Dkt. 23 at 1; Dkt. 24.

7    On January 27, 2022, defendants filed a motion for summary judgment. Dkt. 44. Relevant

8  here, defendants argued that plaintiff's equal protection claim failed because he was not similarly

9  situated to residents at the Transition Facilities and Washington State Hospital. *Id.* at 6–9. On

10  January 31, 2022, plaintiff filed a motion for declaratory judgment that presented issues that

11  duplicated the merits of his equal protection claim. Dkt. 47.

12    While those motions were pending, on February 8, 2022, the District Court issued its

13  order granting the defendant's motion for summary judgment in *Menses*. Pertinently, the District

14  Court held that residents at the Total Confinement Facility "[were] not similarly situated to

15  [Transition Facility] residents for purposes of the pay scale." *See* Order on Motion for Summary

16  Judgment at 13, Case No. 3:19-cv-05574-RJB, Dkt. 105. It reasoned:

17    While [Transition Facility] residents at one time were [designated] as sexually
    violent predators, they have advanced in their treatment to the degree to which
18    they were not deemed as much of a risk of reoffending. With their release to a less
    restrictive alternative and as a part of their transition plans, [Transition Facility]
19    residents . . . worked in jobs in the community . . . , grocery shopped, and ran
    personal errands. They . . . are expected to . . . cook[] and maintain a budget. This
20    increased level of responsibility and freedom demonstrates that [Total
    Confinement Facility] residents are not similarly situated to [Transition Facility]
21    residents."

22  *See id.*

23

24

1      On February 15, 2022, defendants filed a second motion for summary judgment in which

2  they cited *Menses* and argued that they were entitled to qualified immunity on plaintiff's claims

3  for damages. Dkt. 52 at 1–2, 5–8. Defendants further argued that plaintiff's claims for damages

4  against the Center and the Department were barred because these defendants were not "persons"

5  under § 1983. *See id.* at 8. On the same date, defendants filed a response to plaintiff's motion for

6  declaratory judgment. Dkt. 53.

7      On March 10, 2022, the Court granted plaintiff an extension of time to March 24, 2022 to

8  file a single response to defendants' motions for summary judgment. Dkt. 65. In the same order,

9  the Court struck plaintiff's improper reply in support of his motion for declaratory judgment and

10  instructed him to file a proper reply by March 24, 2022. *Id.*

11      On March 28, 2022, plaintiff filed a response to defendants' motions for summary

12  judgment, which the Court accepted as timely. Dkts. 68, 72. In his response, as defendants

13  correctly note, plaintiff "present[ed] no argument regarding his claims that Western State

14  Hospital . . . patients are paid a different rate of pay," thus abandoning that claim. Dkt. 70 at 1.

15  Nor did plaintiff file a reply in support of his motion for declaratory judgment.

16      On March 31, 2022, defendants filed a reply to plaintiff's response to their motions for

17  summary judgment. *See id.*

18                          **SUMMARY JUDGMENT STANDARD**

19      Summary judgment is only proper where the materials in the record show that there is no

20  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

21  *See* Fed. R. Civ. P. 56(a), (c). "A 'material' fact is one that is relevant to an element of a claim or

22  defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac.*

23  *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citation omitted). A disputed

24

material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

When reviewing a motion for summary judgment, the court must believe the nonmoving party's evidence and draw all reasonable inferences in his or her favor. *T.W. Elec. Serv.*, 809 F.2d at 630–31. Also, the court must avoid weighing conflicting evidence or making credibility determinations. *Id.* at 631.

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). "Likewise, mere . . . speculation do[es] not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation omitted). Moreover, "[a] mere scintilla of evidence supporting the non-moving party's position is insufficient[ to survive summary judgment]." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citation omitted).

## SUMMARY JUDGMENT EVIDENCE

Unless otherwise noted, the parties have not disputed the following material facts.

In 1990, the Department established the Center, which "serves as a secure mental health treatment program" for sex offenders that a civil court has committed to the Center after they have completed their criminal sentences. Dkt. 46 ¶ 3. The Center has a Total Confinement Facility and two Transition Facilities. *Id.* ¶ 2.

1    Treatment for civilly committed individuals begins at the Total Confinement Facility.

2    Dkt. 46 ¶ 11. The Center has a Resident Vocational Program ("Vocational Program") that applies

3    to residents at the Total Confinement Facility and is a "component" of their treatment. Dkt. 46-1

4    at 2; Dkt. 68 at 36. "The primary objective of the . . . Vocational Program is to provide residents

5    of the Total Confinement Facility with basic work skills, work experience[,] and evaluation

6    which can be of benefit in obtaining gainful employment following their transition from [the

7    Center] to a less restrictive environment." Dkt. 68 at 36. "A resident's unwillingness to

8    participate in the vocational program may be reviewed as one component of their overall

9    treatment and community readiness when considering recommendations pertaining to [a less

10   restrictive alternative." Dkt. 46 ¶ 8.

11       "If [a] court finds that the resident has made sufficient progress to the point that the

12   resident can be safely managed in the community at a reduced threat of sexual re-offense, the

13   court may order the resident's conditional release to a less restrictive alternative placement,"

14   including the Transition Facilities. *Id.* ¶ 11. At the Transition Facilities, "residents are given

15   responsibilities not shared by residents at the Total Confinement Facility." *Id.* ¶ 13. Residents at

16   the Transition Facilities "travel to the community to do their own grocery shopping, go to their

17   jobs, visit their banks to deposit their earnings, and do personal shopping." *Id.* Also, residents at

18   the Transition Facilities "are given more personal tasks such as having to cook their own food

19   and budget their money to further transition into living in the community." *Id.* "Work in addition

20   to budgeting time and money can be critical to a resident's eventual success in community

21   transition." *Id.*

22       Plaintiff has resided at the Total Confinement Center since January 2010 and has

23   participated in the Vocational Program. *See* Dkt. 45-1 ¶¶ 2, 6; Dkt. 69 ¶ 2. The Vocational

24

Program's normal pay range is $1 to $3 an hour. Dkt. 45-1 at 10. Yet plaintiff contends that he has received $5 an hour for working a "job [that allegedly is] not . . . a normal institutional job or part of the [Vocational Program]." Dkt. 68 at 6. Defendants have not disputed that Plaintiff received $5 for this "Bio cleaning" job. *See id.* By contrast, resident workers at the Transition Facilities "earn $7.16 per hour." Dkt. 46 ¶ 14.

Plaintiff contends that, "since the pandemic," residents at the Transition Facilities are "no longer allowed to go into the community for employment purposes." Dkt. 68 at 4 (citation omitted). However, Keith Devos, the Center's Chief Executive Officer, declares that, "[f]rom May 2020 to July 2020," Transition Facility "residents were not allowed to go into the community as a COVID precaution." Dkt. 46 ¶ 13. Mr. Devos further declares that "[r]esidents at the [Transition Facilities] now travel to the community to, [among other things], go to their jobs." *Id.* Plaintiff has not submitted any evidence showing that Transition Facility residents have not been allowed to work in the community during any time other than May 2020 to July 2020. The Court agrees with defendants that plaintiff has misconstrued Mr. Devos's testimony. *See* Dkt. 70 at 2 ("[R]esidents at the [Transition Facilities] do work in the community and have not been precluded from doing so because of COVID since July 2020." (citation omitted)). On this record, a reasonable juror could only conclude that residents at the Transition Facilities work in the community.

**DISCUSSION**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (citation and internal quotation marks omitted). In

analyzing Equal Protection claims, the "first step is to identify the state's classification of groups." *Id.* (alteration adopted) (citation and internal quotation marks omitted). Once the court has "identified a classified group," it looks "for a control group of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy." *Id.* (citations omitted); *see also Ross v. Moffitt*, 417 U.S. 600, 609 (1974) ("Equal protection . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." (internal quotation marks omitted)). If the two groups are not similarly situated, there is no equal protection violation. *See, e.g.*, *Allen v. Woodford*, 395 F.3d 979, 1018–19 (9th Cir. 2005) (rejecting equal protection claim because two groups "[were] not similarly situated" (citation omitted)); *Van Susteren v. Jones*, 331 F.3d 1024, 1027 (9th Cir. 2003) (same).

"Where . . . state action does not implicate a . . . suspect classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating that [he] 'has been intentionally treated differently from *others similarly situated* and that there is no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (emphasis added) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Thus, to prevail under a theory he is a class one, plaintiff still must show that Transition Facility resident workers are similarly situated to him. *See id.*

Here, to reside at the Transition Facilities, a court must find that "the resident has made sufficient progress to the point that the resident can be safely managed in the community at a reduced threat of sexual re-offense." *See* Dkt. 46 ¶ 11; *see also* Wash. Rev. Code §§ 71.09.090(2), 71.09.092. Furthermore, Transition Facility "residents are given responsibilities not shared by residents at the Total Confinement Facility." Dkt. 46 ¶ 13. Transition Facility

residents "travel to the community to do their own grocery shopping, go to their jobs, visit their

banks to deposit their earnings, and do personal shopping." *Id.* Also, Transition Facility residents

"are given more personal tasks such as having to cook their own food and budget their money to

further transition into living in the community." *Id.* However, as the District Court concluded in

*Menses*, Total Confinement Facility residents do not enjoy this "increased level of responsibility

and freedom." *See* Order on Motion for Summary Judgment at 13, Case No. 3:19-cv-05574-RJB,

Dkt. 105; *see also* Wash. Rev. Code § 71.09.020(16) (defining "secure community transition

facility" as "a residential facility for persons civilly committed and conditionally released to a

*less restrictive alternative* under [chapter 71.09]" (emphasis added)). Apart from the unsupported

contention that Transition Facility residents do not work in the community, plaintiff does not

dispute this fact. Nor does plaintiff dispute that this greater responsibility and freedom is "critical

to a resident's eventual success in community transition." *See* Dkt. 46 ¶ 13; *see also Taylor v.

San Diego Cty.*, 800 F.3d 1164, 1169 (9th Cir. 2015) ("While the group members may differ in

some respects, they must be similar in the respects pertinent to the State's policy."). Accordingly,

as in *Menses*, the evidence shows that resident workers at the Transition Facilities are not

similarly situated to resident workers at the Total Confinement Facility regarding the

Department's pay scale.

　　　　Plaintiff argues that resident workers at the Total Confinement Facility are similarly

situated to resident workers at the Transition Facilities. *See* Dkt. 68. In support, he contends that

the Department policy that authorizes the Vocational Program applies to both the Total

Confinement Facility and the Transition Facilities. *See id.* at 3–4, 9. *But see id.* at 36 (the

policy's stating that it applies to residents of "Total Confinement Facility" and serves to help

them find employment "following their transition from [the Total Confinement Facility] to a less

restrictive alternative." Further, plaintiff contends that Transition Facility residents cannot work community jobs until they have been on a least restrictive alternative placement for at least six months. *See id.* at 5. So he concludes that residents at both institutions work the same "institutional jobs" under the same legal framework, making them similarly situated. *See id.* at 3–5, 9.

The Court assumes, without deciding, that the policy at issue authorizes Transition Facility residents to work for the Department. However, this alleged fact is immaterial. As discussed, the evidence shows that Transition Facility residents present a reduced risk of sexual re-offense and enjoy significantly greater responsibility and freedom than Total Confinement Facility residents. And plaintiff does not dispute that "budgeting [increased] time and money can be critical to a resident's eventual success in community transition." *See* Dkt. 46 ¶ 13. Because Transition Facility residents are at an advanced stage of treatment and face different institutional and life objectives (including the need for greater financial independence), they are not similarly situated to Total Confinement Facility residents in key "respects pertinent to" the Department's pay scale. *See Taylor*, 800 F.3d at 1169.

The allegation that Transition Facility residents cannot initially work in the community is similarly immaterial. To reiterate, no matter whether Transition Facility residents work in the community or in those Facilities, they present a reduced risk of sexual re-offense and enjoy much greater responsibility and freedom. Plaintiff's remaining arguments are not fully clear and lack relevance to the issue whether Transition Facility residents are similarly situated to Total Confinement Facility residents for equal protection purposes. *See* Dkt. 68 at 2–10; *see also* Dkt. 70 at 2–3 (discussing deficiencies in plaintiff's response).

1    In sum, no reasonable juror could conclude that resident workers at the Transition

2    Facilities are similarly situated to resident workers at the Total Confinement Facility regarding

3    the Department's pay scale. So defendants are entitled to judgment as a matter of law on

4    plaintiff's equal protection claim. And, because plaintiff's equal protection claim lacks merit,

5    defendants are entitled to qualified immunity on plaintiff's request for damages. *See Pearson v.*

6    *Callahan*, 555 U.S. 223, 231–32, 236 (2009) (defendants enjoy immunity if the facts fail to show

7    "a violation of a constitutional right").

8    Additionally, defendants argue that plaintiff's claim for damages against the Center and

9    the Department is barred because these defendants are not "persons" under § 1983. Dkt. 52 at 8.

10   Because the Department and the Center are state agencies, they are not "persons" under § 1983.

11   *See Pittman v. Oregon, Emp. Dep't*, 509 F.3d 1065, 1072 (9th Cir. 2007) (citations omitted). To

12   be clear, though, because the Department and the Center are not "persons" under § 1983,

13   plaintiff's claims for injunctive and declaratory relief against these defendants are also futile. *See*

14   *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("State agencies . . . are not 'persons'

15   within the meaning of § 1983, and are therefore not amenable to suit under that statute." (citation

16   omitted)).

17   Plaintiff's motion for declaratory judgment presents issues that duplicate the merits of

18   plaintiff's equal protection claim. Dkt. 47. So, it is improper and should be denied. *See Segar v.*

19   *Allstate Fire & Cas. Ins. Co.*, No. C21-1526JLR, 2022 WL 102035, at *8 (W.D. Wash. Jan. 11,

20   2022) ("Requests for declaratory judgment orders that merely impose the remedies provided for

21   in other claims are duplicative and may be dismissed on that basis; declaratory relief is not

22   cognizable as an independent cause of action in such circumstances." (citations and internal

23   quotation marks omitted)). And this motion would fail even if the Court construed it as a motion

24

1  for summary judgment. As discussed, no reasonable juror could conclude that Transitional

2  Facility resident workers are similarly situated to Total Confinement Facility resident workers

3  regarding the Department's pay scale. Contrary to the contentions in his motion for declaratory

4  judgment, plaintiff has not—and cannot—show otherwise.

5  ### *IN FORMA PAUPERIS* ("IFP") STATUS ON APPEAL

6      Plaintiff should be granted IFP status for purposes of an appeal of this matter. IFP status

7  on appeal shall not be granted if the district court certifies "before or after the notice of appeal is

8  filed" "that the appeal is not taken in good faith[.]" *See* Fed. R. App. P. 24(a)(3)(A). "The good

9  faith requirement is satisfied if the petitioner seeks review of any issue that is not frivolous."

10 *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (citation and internal quotation marks

11 omitted). Generally, an issue is not frivolous if it has an "arguable basis either in law or in facts."

12 *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

13     Here, although plaintiff's equal protection claim lacks merit, it is not frivolous. So IFP

14 status should be granted for purposes of an appeal.

15 ### CONCLUSION

16     As discussed above, it is recommended that defendants' motions for summary judgment

17 (Dkts. 44, 52) be **GRANTED** and that plaintiff's motion for declaratory judgment (Dkt. 47) be

18 **DENIED**. It is further recommended that this case be **CLOSED**.

19     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

20 fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P.

21 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

22 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

23 of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985);

24

*Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 22, 2022** as noted in the caption.

Dated this 6th day of April, 2022.

J. Richard Creatura
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 13